UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

_____

PROVINCE LAKE GOLF ENTERPRISES, INC.,
and PLG HOLDING LLC,

               Plaintiffs,

v.

PHILADELPHIA INDEMNITY INSURANCE
COMPANY,

               Defendant.
_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 1:20-cv-00309

**FIRST AMENDED COMPLAINT**

      Plaintiffs Province Lake Golf Enterprises, Inc. and PLG Holding LLC hereby submit

their First Amended Complaint and sue Defendant Philadelphia Indemnity Insurance Company

("Philadelphia") on grounds as follows:

**Introduction**

      1.     From and after the date of the fire loss at issue, Philadelphia by and through its

representatives and agents, and others to be named, undertook to deny Plaintiffs timely access to

insurance proceeds due pursuant to the terms of Philadelphia Indemnity Insurance Policy

#PHPK1674591.

      2.     The delays and continuing refusal by Philadelphia to timely remit payments due

in clear violation of the policy terms, together with the bad faith acts and actions of Philadelphia

and its representatives, that were/are designed to leverage a settlement of the insurance claim on

terms favorable to Philadelphia, include:

(a)     misstatements of the policy terms and coverages by Philadelphia and its employees and agents in a continuing attempt to persuade Plaintiffs that coverages did not exist or were lower than what the coverages were represented in the policy,

(b)     failure and refusal to timely remit payments due in accordance with policy terms,

(c)     failure and refusal to provide answers to requests from Plaintiffs and Plaintiffs' existing and prospective lenders, on the timing of future insurance payments,

(d)     undervaluation of the building that was destroyed by the fire by: (i) by hiring agents to value the Clubhouse/Restaurant/Pro Shop facility that was destroyed, which valuation was performed without any knowledge of or background about the facility that burned, including the size of the structure, the finishes of the structures, the landscaping, and other factors; (ii) by directing the valuation of the building loss claim be performed to fit within certain claim parameters that Philadelphia and Colonial had developed, to benefit Philadelphia at the expense of Plaintiffs, (iii) by understating the square footage of the building at 15,238 sq.ft. when the actual square footage was 19,222 sq.ft. (exclusive of exterior decks) ; (iv) by using a grossly understated replacement cost of $125 per sq.ft. to value the loss, (v) by omitting from their loss calculation the value of the commercial kitchen, antique Brunswick Bar,  together valued at close to $300,000, (vi) by intentionally overvaluing the other properties that were covered under the policy but not lost in the fire, in order to create a co-insurance penalty that would reduce the claim to the sole benefit of Philadelphia.

3.     The bad faith acts and actions have been undertaken by Philadelphia in order to: delay the reconstruction of Plaintiffs' properties; delay and ultimately deny Plaintiffs recovery under various coverage forms to which Plaintiffs are entitled; and leverage a settlement of Plaintiffs' claims on terms favorable to Philadelphia.

**Parties**

4.      Plaintiff Province Lake Golf Enterprises, Inc. ("PLGE") is a corporation formed and organized under the laws of Maine, with its corporate governance controlled under Maine law.  At the relevant times, PLGE has been headquartered in Maine.

5.      Plaintiff PLG Holding, LLC ("PLG Holding") is a Limited Liability Corporation formed and organized under the laws of Maine, with its corporate governance controlled under Maine law. At the relevant times, PLG Holding has been headquartered in Maine.  PLG Holding owns the golf course property to the East of Route 153 in Parsonsfield, Maine, and upon which are hole 1 and holes 7 through 18, and upon which was situated the Clubhouse/Restaurant/Pro Shop that burned to the ground in March 2018.  A related entity, Edge Lake Associates, LLC, owns the golf course property that lies to the West of Route 153 in Parsonsfield, Maine and Effingham, New Hampshire and upon which are holes 2 through 6 of the golf course.

6.       Defendant Philadelphia Indemnity Insurance Company ("Philadelphia") is a corporation formed and organized under the laws of Pennsylvania, with its offices located at One Bala Plaza, Bala Cynwyd, Pennsylvania.  At all times relevant hereto, Philadelphia has been headquartered in Pennsylvania.

**Jurisdiction and Venue**

7.      Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.  Plaintiff PLGE is a Maine corporation with its principal place of business in Maine.  Plaintiff PLG Holding is a Maine limited liability company with its principal place of business in Maine.  Defendant Philadelphia is a Pennsylvania corporation with its principal place of business in Pennsylvania. Neither of the Plaintiffs is from the same state as the Defendant.  Therefore, complete diversity of citizenship exists.  The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

8.      Venue in the District of New Hampshire is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the District of New Hampshire, and substantial property that is the subject of the action is situated in the District of New Hampshire. The insurance policy at issue was sold in New Hampshire by a New Hampshire insurance agent.  Mailed correspondence alleged were received by Plaintiffs via it's post office box maintained in New Hampshire and sent by Philadelphia to that New Hampshire post office box.  Many of the telephone communications alleged herein involved New Hampshire participants including Plaintiffs' insurance broker and Plaintiffs' principals who resides in New Hampshire.  Certain meetings concerning the loss at issue and insurance policy at issue also took place in New Hampshire.  Elements of the property at issue, including the irrigation system, are physically located, at least in substantial part, in New Hampshire.

### Factual Background

***Overview of the Property and Insurance Coverage***

9.      Province Lake Golf is an 18-hole golf course located in and straddling the towns of Parsonsfield, Maine, and Effingham, New Hampshire, open to the public and offering a limited number of memberships.  The front 9 holes were built in 1918, and the course was expanded to 18 holes in the mid 1980s.

10.      Province Lake Golf entities, including PLG Holding, Edge Lake Associates, LLC, PLG Equipment, LLC and Edge Lake Farm, LLC, acquired the properties between April 2005 and August 2012, with the intention of leasing the properties to the operating entity, PLGE.

11.      PLGE was formed in 2005 to operate the golf course as the operating entity, and to lease the golf course properties and equipment from various LLCs that were owned, managed and controlled by one family at all time relevant hereto.

12.     The Restaurant/Clubhouse/Pro Shop building that was destroyed by fire, had been insured by Philadelphia since 2009, under a blanket replacement cost policy.

13.     The Philadelphia Policy on the date of the loss was #PHPK1674591.  The policy was purchased in the State of New Hampshire from an insurance agent who maintains office in North Conway, New Hampshire.

14.     The blanket replacement cost policy included a 100% co-insurance requirement requiring that the blanket replacement cost coverage limit, must equal or exceed the total estimated replacement cost value for all the buildings covered.

15.     The PLGE buildings/property insured under Policy #PHPK1674591, Property Coverage Form PI-ULT-007 for the 2017/2018 policy year included:

(a)     the Clubhouse/Restaurant/Pro Shop facility owned and insured by PLG Holding and leased to PLGE which included a fully functioning facility encompassing approximately 19,222 sq.ft. (excluding exterior decks), with a fully functioning 1440 sq.ft. commercial kitchen, antique Brunswick Bar, wool carpeting, high end finish work, and many other elements;

(b)     a Maintenance Building owned and insured by PLG Holding and leased to PLGE which includes an engineered 4200 sq.ft. metal building that houses the golf course equipment and a shop that is used for maintaining equipment, most of which equipment is owned by Province Lake Equipment, LLC, and leased to PLGE for maintenance of the golf course;

(c)     the "Garland Property" owned by Edge Lake Farm, LLC which includes a vacant and gutted barn with an adjoining single-family farmhouse (both of which structures are without any plumbing, electricity, insulation, windows, interior finishes, or the like)

together having approximating 5,900 sq.ft. of space, which was acquired in late 2012, when it was added to the property coverage form;

(d)      a gazebo owned by PLG Holding and leased to PLGE containing 256 sq.ft. of space;

(e)      a pump house owned by PLG Holding and leased to PLGE constructed out of cinder block and containing about 96 sq.ft. in area;

(f)      a driving range shack owned by PLG Holding LLC and leased to PLGE that is a small wood frame building on the end of the driving range containing 192 sq.ft. of space; and

(g)      a single-story building used for child-care services for golfers while golfing owned by PLG Holding and leased to PLGE that is a single-story wood frame structure with 586 sq.ft. of floor space.

16.      By policy coverage form PI-ULT-134, an irrigation system was specifically excluded from coverage under coverage form PI-ULT-007.  The irrigation system was insured under coverage form PI-ULT-128, section IV, F.2. for up to $1,000,000 and pursuant to General Conditions for that coverage, at paragraph 1: "Coinsurance does not apply to this coverage."

***The Fire Loss at Issue and Prompt Claim Submittal by PLGE***

17.      Beginning late on March 7 and through the early morning of March 8, 2018, a fire destroyed the entire Clubhouse/Restaurant/Pro Shop building.

18.      PLGE informed its insurance agent, Steve Cote ("Cote") of Chalmers Insurance ("Chalmers"), of the fire early in the day on March 8, 2018.  Cote acted as an agent for Philadelphia in selling the policy at issue.

19.      The Fire Marshall for the State of Maine and the Fire Inspector for Philadelphia visited the site in March and in April 2018.

20.     The site was released for demolition by the State Fire Marshall and Philadelphia's Fire Inspector in early April 2018.

21.     PLGE filed a comprehensive preliminary Statement of Loss as required by the policy terms in early May 2018 and thereafter has timely complied with all relevant provisions of the policy terms.

22.     Philadelphia did not provide a full and comprehensive response to PLGE's May 2018 Statement of Loss and claims outlined therein until February 26, 2019.

23.     The February 26, 2019 response misrepresented the coverage available to PLGE under the various policy coverage forms.

24.     Philadelphia's responses to subsequent updated claims filings were similarly delayed, and often included conclusory findings contrary to the explicit policy terms.

25.     Payment of the various claims have been consistently delayed well beyond the insurance contract terms.

***Philadelphia's Delays, Inadequate Responses, and Failure to Fully Pay on the Building Claim***

26.     By March 10, 2018, PLGE was in contact with Peter Riesbeck ("Riesbeck") whose company Colonial Adjustment, Inc. ("Colonial") was hired by Philadelphia to adjust the claim on Philadelphia's behalf, and who served as Philadelphia's agent in adjusting the loss at issue.

27.     In correspondence, Riesbeck requested various items including monthly and annual Profit and Loss statements, photos, inventory of equipment, and a deed showing ownership.  PLGE timely responded to Riesbeck's requests.

28.     PLGE timely sent requested financial information on March 12, 2018.

29.     PLGE timely sent photos of the facility that burned on March 12, 13, and 24, 2018.

30.     PLGE timely sent listings of personal property and equipment that was lost on May 23 and 29, 2018.

31.     PLGE timely provided a copy of the deed showing ownership by hand delivery during the course of a site meeting in March 2018.

32.     Riesbeck acknowledged receipt of the information sent to him by PLGE in emails and comments.

33.     On March 15, 2018, Riesbeck came to view the site of the fire and to have a preliminary discussion about the claim.  During the conversation, Riesbeck advised PLGE that he had reviewed the policy and felt that it could be wrapped up quickly.  Riesbeck further stated that since there was a co-insurance clause, it was important that the claim not exceed $1.977 million, to avoid a co-insurance penalty.

34.     On March 23, 2018, Riesbeck told PLGE that the Philadelphia had hired Brian Vanderhoff ("Vanderhoff") of J.S. Held LLC to assist Riesbeck in his valuation of the loss.

35.     Riesbeck stated that Vanderhoff would be contacting PLGE to get information about the building that burned.  Vanderhoff, however, never contacted PLGE or requested any information required to value the loss.

36.     On March 26, 2018, Riesbeck described Vanderhoff's role as being "a building consultant hired by the carrier to help me and the carrier to give us a replacement cost as close as possible to what was existing prior to the fire."

37.     Riesbeck reported that "Brian [Vanderhoff] is aware of the limits on the policy and I explained to him what my evaluation is as well, so we are all looking at the figures the same way."

38.     Riesbeck instructed Vanderhoff on the value he wanted assigned to the loss.

39.     Vanderhoff complied with Riesbeck's instructions and grossly undervalued the value the building that burned to the ground.

40.     Vanderhoff never contacted PLGE to request information on the structure that was destroyed.

41.     Rather, Vanderhoff calculated replacement cost for the 15,238 sq.ft. structure at $125 per square foot, significantly less than a replacement cost value would be under any scenario and ignoring the fact that the structure was closer to 19,222 sq.ft. exclusive of exterior decks.  Vanderhoff wanted to ensure the valuation was under the $1.977 million amount Riesbeck had set for the claim.

42.     Vanderhoff subsequently acknowledged to PLGE's insurance agent Cote and PLGE that he (Vanderhoff) had dramatically undervalued the building based upon information and instructions he received from Riesbeck.

43.     On March 26, 2018, Riesbeck advised PLGE that an initial payment on the building loss claim in the amount of $150,000 was being mailed to PLGE.  The check was subsequently received on or about April 2, 2018.

44.     Pursuant to the policy terms, under coverage form PI-ULT-007, sections E.4.b. and f., Philadelphia was to have paid the amount due on the claim within 30 days of the sworn proof of loss dated May 7, 2018.  Based upon the submitted claim by PLGE for the building loss, in the amount of $2,966,300, which amount Philadelphia has since approved, Philadelphia should have paid PLGE the amount of $2,135,736 by June 7, 2018, even accepting the 28% depreciation holdback amount.

45.     On March 26 and 30, 2018, and on repeated occasions thereafter, PLGE contacted Riesbeck and other representatives of Philadelphia, and requested a face-to-face meeting to

review, among other things, the claim and claims procedures.  PLGE's requests for a face-to-face meeting included an offer by PLGE to travel to Philadelphia's offices in Pennsylvania.

46.     PLGE meeting requests were made in order to facilitate and expedite the adjustment process, to request an outline of all information that was required of PLGE, and to address some preliminary questions that had arisen within the first two weeks after the loss that remained unanswered.

47.     PLGE advised Riesbeck and other representatives of Philadelphia that their continued refusal to meet or discuss the various issues would cause PLGE additional financial harm and further delay the design and construction of the new facilities.

48.     No employee from Philadelphia has ever visited the site of the loss or visited with any representative of PLGE, or its insurance agent.

49.     On March 31, 2018, Riesbeck sent documentation of his estimate of the claim, which he said would be "reserved" by Philadelphia.  Riesbeck reserved the building loss claim at $1,989,000, an amount Riesbeck has since described as the "coverage limit under the policy".  Riesbeck also reserved the full amount due under the "personal property" coverage at $127,109.

50.     Pursuant to policy contract terms, Philadelphia was obligated to pay to PLGE a minimum of $1.43 million as an advance on the building claim by early April 2018 (30 days after the loss) even at the substantially understated loss value set by Riesbeck, based upon the "approved" claim ($1,989,000), less a 28% depreciation holdback amount of $570,000.

51.     Riesbeck represented that the 28% "depreciation holdback" was an accepted industry standard depreciation holdback for a replacement cost policy on a building loss claim and that it would be paid as/when the insured (PLGE) had paid out more on the replacement of the buildings than it had received in claims payments.

52.     Riesbeck knew that depreciation holdbacks are not "standard" and that depreciation holdbacks are to be based upon relevant valuation factors including the condition of the property, fair market value of the property, and the like, and is a calculation that should be documented and reviewed with the insured.

53.     No person associated with Colonial or Philadelphia has ever provided any information on the factors included by them in the calculation of the depreciation holdback despite repeated requests.

54.     By inflating the depreciation holdback, Colonial and Philadelphia have reduced the amount of claim funds disbursed to PLGE.

55.     The amount of the depreciation holdback from the claim amounts to $830,564.

56.     The holdback amount has been withheld/deducted from the claim payments due to PLGE by Philadelphia in its continued attempts to leverage a settlement of the claims on terms favorable to Philadelphia.

57.     Philadelphia subsequently, in July 2018, accepted PLGE's initial valuation of the building/property coverage loss at $2.997 million.  Had that claim amount been timely accepted in early May 2018, payment due in May 2018 would have approximated $2.1 million, even after considering their 28% depreciation holdback.

58.     In violation of the policy terms, the second and third payments in the amounts of $750,000 and $730,000 were held and delayed until May 2018 and August 2018 respectively. The initial payment of $150,000 had been received in April 2018.

59.     The delays in payment adversely impacted PLGE's ability to timely rebuild.

60.     Philadelphia's initial and continuing failure and refusal to timely remit payments on claims that they had approved, is evidence of their continuing bad faith, and continues

through the date of this First Amended Complaint, as Philadelphia attempts to leverage a

settlement of the claims on terms favorable to Philadelphia.

61.     On April 9, 2018, Riesbeck advised that Vanderhoff was still working to finalize

the claim for the building that was lost, commenting that "coverage is written on a blanket but if

we evaluate all the properties (buildings) on the policy we will exceed the blanket limit and then

there would be a penalty because you are not insured up to the 100% which you are required by

the policy contract."  Riesbeck made this comment before visiting or undertaking any evaluation

of the other "buildings" that were insured but not damaged.

62.     On April 10, PLGE requested an explanation from Riesbeck on his "last

comments re 'blanket coverage' and the conclusion that including the other buildings would be a

problem."

63.     Riesbeck had not visited or evaluated any of the remaining structures covered by

the policy, so he could not have reasonably concluded as of April 10, 2018 that there "would be a

problem" with the blanket coverage limit of $3.6 million.

64.     On May 7, 2018, Riesbeck, together with and on behalf of Philadelphia,

misrepresented to PLGE that the limit of property coverage for the building loss was $1.977

million, and that if a claim was submitted for more than $1.977 million, a co-insurance penalty

would be applied that would reduce recovery below the $1.977 million coverage limit.

65.     Riesbeck and Philadelphia knew that the representations to PLGE were incorrect

at the time the representations were made and did so intentionally in order to deny PLGE the

recovery of amounts to which it is entitled.

66.     PLGE responded to Riesbeck and Philadelphia on May 7, 2018 noting that the

blanket coverage limit was $3.6 million, and that that full amount would be available to satisfy

the claim subject only to a co-insurance penalty, if any such penalty were applicable.  No

response was received from Riesbeck or Philadelphia with respect to the $3.6 million coverage limit.

67.     PLGE submitted its "initial" Statement of Loss on May 11, 2018, receipt of which was acknowledged by Riesbeck and Philadelphia as timely received on May 12, 2018.

68.     Riesbeck promised a response to the "initial" Statement of Loss by May 18, 2018.  In its statement of loss, PLGE reminded Philadelphia that further delays in processing the claim or advancing funds that were rightfully due, would cause additional financial hardship and adversely impact the then opening golf season.

69.     On May 21, 2018, PLGE followed up and repeated its request for a timely response to the Statement of Loss.

70.     On May 22, 2018, Riesbeck responded that he was still awaiting a response from Philadelphia and had scheduled an on-site meeting for May 30, 2018 with Vanderhoff, so that he could prepare a valuation of the replacement cost for the structures that were not destroyed.

71.     On May 23, 2018, Riesbeck first advised that Philadelphia would be sending the over-due amounts for demolition that had been completed, as well as the second installment of $750,000 on the building loss claim.

72.     On May 24, 2018, Riesbeck told PLGE that the advance on the demolition claim would be charged against the building loss until that limit was exhausted.  PLGE requested documentation of that stated position.  Riesbeck has failed and refused to respond to that question.

73.     PLGE's insurance agent told Riesbeck that the demolition cost advance should have been charged to the Demolition coverage and not against the Building Loss, and should not have been delayed.  Riesbeck later acknowledged that the payment for Demolition and Pollution

claims should not have been charged against the "Building Property Loss Claim" on July 11, 2018.

74.     On May 29, 2018, PLGE received the second partial advance on the building claim in the amount of $750,000.  The initial advance of $150,000 had been received on April 2, 2018.

75.     On May 30, 2018, Riesbeck and Vanderhoff came on site to inspect and evaluate the buildings that were covered under the policy, but not destroyed by the fire.  The stated purpose of the visit was to assess the "value of the properties as existing as of the date of the fire" for purpose of determining whether PLGE was adequately insured as of the date of the loss in order to assess whether there would be a coinsurance penalty.

76.     Riesbeck and Vanderhoff walked in and around all the buildings on both the New Hampshire and Maine sides of the property, while Vanderhoff took pictures that were to be included in a report.  PLGE requested a copy of the report be sent to PLGE immediately when completed.  Riesbeck agreed to PLGE's request.

77.     During the site visit, PLGE presented Riesbeck with a list of "Issues to Address with Adjusters".  Riesbeck stated that he could not respond at that time but committed that he would respond within a few days.

78.     No response to the "Issues to Address with Adjusters" document was ever received from Riesbeck.

79.     On May 30, 2018, PLGE requested that Philadelphia provide an update on timing for adjustment of the claims, and for claim payment timelines estimating when payments would be remitted.  Philadelphia failed and refused to provide any answers.

80.     On May 30, 2018, a senior adjuster for Philadelphia, responded by stating: "We continue to proceed with the adjustment of your claim in a diligent manner. . . .  Please note that

we have already paid you $1,017,000 for your claim." The adjuster went on to state that "Further

payments will be issued as appropriate and in a timely manner" while claiming "There are no

timelines which can be adhered to" and asserting "Payments are issued as damage and loss are

determined."

81.     The buildings/property coverage form PI-ULT-007 outlines the obligations of

Philadelphia.  In Section E. (Loss Condition), 4. (Loss Payment) it states, at subsection 4.b. that

"We [Philadelphia] will give notice of our intentions within 30 days after we receive the sworn

proof of loss" and, at subsection 4.f., "We [Philadelphia] will pay for covered loss within 30 days

after we receive the sworn proof of loss, if,  . . . [per sub-subsection 4.f.1] You have complied

with all of the terms of this coverage form, and, . . . [per sub-subsection 4.f.2.(a)] We have

reached an agreement with you on the amount of 'loss.'"

82.     Philadelphia's response ignored the facts of the claim as well as the clearly noted

time deadlines and obligations of Philadelphia as outlined in the policy contract, including: (a)

on May, 7, 2018, more than three weeks before Philadelphia's response of May 30, 2018,

Riesbeck had already concluded that the building property loss claim would exceed $1.977

million, and that even after a hold back for depreciation, the amount then due for the building

loss well exceeded $1,426,357.50; and (b) the insurance policy contract had obligated that

Philadelphia respond within 30 days of PLGE's May 9, 2018 Statement of Loss such that there

was a contractual obligation that Philadelphia timely respond to the claims filed by PLGE.

83.     On June 18, 2018, PLGE renewed its request for Vanderhoff's report that was to

be prepared based upon the May 30, 2018 site walk and inspection of all the properties that were

covered under the policy.

84.     On July 25, 2018, over one month after PLGE's request, and two months after the date of the site inspection, Philadelphia finally sent PLGE a copy of Vanderhoff's valuation report.

85.     Philadelphia also agreed on or about July 25, 2018 that the initial value of the building loss claim from the May 9, 2018 Statement of Loss, $2,966,300, would be "accepted" and would be the basis for an additional claim payment.

86.     Philadelphia, however, stated that even accepting PLGE's loss calculation, there would be a "coinsurance penalty" based upon the valuations they had assigned to the other insured properties.

87.     In order to "reduce" payment due under the claim, Philadelphia undertook to overvalue the other properties covered under the building property loss coverage, and thereby create a "coinsurance" penalty that would reduce the claim amount.

***Philadelphia's Faulty Valuation of Buildings for Purposes of the "Co-Insurance" Calculation***

88.     On August 10, 2018, Riesbeck and Vanderhoff on behalf of Philadelphia attended a meeting with PLGE and its insurance agent Cote.

89.      At the August 10, 2018 meeting, Riesbeck confirmed that he had instructed Vanderhoff to value the Garland Property (house and barn) as though they were fully completed with electrical, plumbing, insulation, and fully functional, even though the Garland Property was just a shell.  Riesbeck stated that "replacement cost" meant the building was to be valued as if fully functioning and completed.

90.     The policy, at PI-ULT-007, E.7.a., however, stipulates that valuation for "replacement cost" purposes is the replacement cost of the structure as of the time of the loss. This applies both to the property destroyed by the fire, and the value of structures that were not destroyed.   This "replacement cost" valuation excludes "ordinance of law" costs that are insured

under a separate policy provision, and not encompassed within the "replacement cost" valuation as of the date of loss.

91.     When the policy provisions were pointed out to Riesbeck, he acknowledged that the "issue" was valid and stated that he would go back to Philadelphia and ask that "Actual Cash Value" of the property in the conditions as existed be used for the coinsurance calculation.

92.     At the August 10, 2018 meeting, Vanderhoff stated that he would support the valuations prepared by PLGE that were discussed and reviewed at the meeting, including valuation of the vacant single family house at or below $50 per foot, and the barn at or below $40 per foot.

93.     At the conclusion of the August 10, 2018 meeting, Riesbeck and Vanderhoff stated that they would review and update their analyses based upon the discussions and would provide a revised analysis to Philadelphia.  They also said that they would update the building loss value to include the commercial kitchen and the antique Brunswick Bar.  Riesbeck never updated the loss value to include the commercial kitchen and antique Brunswick Bar.

94.      In an August 30, 2018 email, PLGE renewed its request for a face-to-face meeting, and again offered to travel to Philadelphia to discuss the claim and timing of the claims adjustment process moving forward.

95.     In a September 2018 telephone call, Gary Grabauskas ("Grabauskas") of Philadelphia attempted to redefine insurance definitions, and valuation methods for property loss claims.

96.     With respect to Replacement Cost Coverage, Grabauskas argued that replacement cost presumes replacing a structure as if fully complete and functional, irrespective of the condition of the property at the time of valuation/loss.  Industry literature and policy terms,

however, define replacement cost valuation as the cost to replace the structure as it existed as of the time of the loss.

97.     With respect to Ordinance or Law Coverage, Grabauskas argued that there would be no "ordinance or law" coverage for the property at issue since the building burned to the ground, and would need to be replaced by a building that meets current zoning and building code requirements.  Industry literature/guidelines and the policy terms, however, indicate that for replacement cost policies, "ordinance or law" coverage is insurance coverage necessary to fund the difference between the replacement cost of the structure as existing prior to the loss and the costs associated with the replacement of the structure necessary to meet the then existing zoning and building codes.

98.     By valuing the structures insured under the Property coverage form PI-ULT-007 as though completed and ready for occupancy, despite their condition existing as of valuation date (i.e., the date of the fire), Philadelphia has intentionally overvalued those structures, and has done so with the intention of creating a coinsurance penalty to assess against PLGE, which amount would be deducted from the claim amounts otherwise due to PLGE.

99.     Philadelphia is on notice/aware that its own "independent" valuation expert, Vanderhoff, reviewed and agreed with PLGE's valuation in a meeting on August 10, 2018.  A summary of the meeting was prepared by PLGE and timely submitted to Philadelphia and Grabauskas.  The summary was attested to as being accurate and truthful by PLGE and by Cote, the local agent representing Philadelphia when it sold its policy to PLGE.

100.    By letters dated September 27, 2018 and October 5, 2018, appearing to be the same document, Grabauskas and Philadelphia attempt to support their valuation.  Their valuation summary total of $4,300,775 overstated the value of the surviving structures by $792,275 thereby creating a significant coinsurance penalty against PLGE.

101.    By letter dated February 26, 2019, Philadelphia further adjusted their valuation summary down to $4,099,275, reducing the overstatement of the surviving structures to $590,775, still creating a significant coinsurance penalty against PLGE.

102.    The overstatement of the property valuations were based upon the inappropriate valuation guidelines that Philadelphia established for the "independent" valuation by Vanderhoff.

103.    As noted above, Vanderhoff has attested to the fact that the valuations provided by PLGE in its initial summary valuation were reasonable, and more accurate of the "replacement cost value" as of the valuation date, but Philadelphia continues to rely upon a faulty valuation.

104.    PLGE has solicited and received multiple bids from a number of contractors or building providers to support its valuations.  The overstatement by Philadelphia of the various insured buildings that survived the fire amounts to $465,775, which together with the inclusion of the irrigation system ($125,000) equals the $590,775 overstatement of insured property for coinsurance purposes.

105.    Philadelphia continues to include the value of the "irrigation system" in the coinsurance penalty calculations despite the clear policy language which documents that the irrigation system was not insured under the policy coverage form that is the subject of the coinsurance clause, and, further, is insured under coverage form PI-ULT-134 which specifically notes that coverage of the irrigation system is not subject to a coinsurance requirement.  The overstatement of the property valuations resulting from the inappropriate inclusion of the value of the irrigation system amounts to $125,000.

106.    Beginning with the 2009/2010 Philadelphia policy, the underground piping for the golf course irrigation system was specifically excluded from the property coverage by Property

coverage forms PI-ULT-007, A.1.b.9., and by coverage form PI-ULT134 (Golf and Country Club Irrigation System Exclusion).

107.    The piping for the irrigation system was specifically covered/insured under Golf and Country Club Endorsement, Ultimate Cover, by coverage form PI-ULT-128, Section IV.F.1. (in ground sprinkler systems and equipment).  As noted at Section F. (General Conditions) at section 1., "Coinsurance does not apply to this coverage".

108.    Further, pursuant to PI-ULT-007 paragraph A.2.i., because the in-ground sprinkler system is more specifically described under PI-ULT-128 section IV.F.1., it would therefore not be included/covered/insured under Property Coverage form PI-ULT-007 even absent the specific exclusions under coverage forms PI-ULT-007, A.1.b.9., and coverage form PI-ULT134 (Golf and Country Club Irrigation System Exclusion).

109.    Philadelphia has included the irrigation system (at $125,000) in the co-insurance property loss calculations in order to penalize PLGE, and thereby reduce the claim amount due to PLGE, this despite the fact that the Irrigation System was specifically excluded from the property coverage, and was specifically covered under a separate coverage form not subject to the co-insurance requirement.

110.    The inclusion of the irrigation system as covered property under PI-ULT-007, in the co-insurance penalty calculations, despite the fact that it was specifically excluded from coverage by the terms of coverage from PI-ULT-134, is further evidence of bad faith by Philadelphia.

***Philadelphia's Delay in Paying Members' Property Claims***

111.    Riesbeck and Cote, acting in their positions as agents for Philadelphia, had assured PLGE in April 2018 that Members' claims (for loss of clubs and other personal property

while under the care, custody and control of PLGE) would be paid directly by Philadelphia to the Members.

112.     On May 31, 2018, Riesbeck told PLGE that the Members' claims had "been adjusted" and that he was only waiting to finalize and submit for payment.  Because several Members had gotten tired of waiting and had processed the claims through their own accounts, Riesbeck wanted to wait to make sure there were no "duplicates".  By his comments, Riesbeck affirmed that there was coverage for Members under the policy.

113.     The insurance policy language in coverage form PI-ULT-128, IV. (Additional Coverages) section H is clear that, by terms of the insurance contract, Philadelphia was obligated to pay up to $3,000 per Member for property of Members that was lost in the fire while under the care, custody and control of PLGE, subject only to a limit of $3,000 per Member and $50,000 total for all Members.

114.     On June 17, 2018, Riesbeck told PLGE that Philadelphia would not honor the Members' claims because those claims were "Business Personal Property" claims ("BPP") and were subject to the BPP coverage limit of $127,109.  Philadelphia and Riesbeck then argued that the coverage limit amount had already been processed as a claim.  Riesbeck and Philadelphia cited the coverage limit as a reason not to pay the Members' claims, even though Philadelphia had not remitted any of the BPP limit of $127,109 by that date and did not in fact pay the BPP claim until late September 2018.

115.     In fact, by the clear terms of the policy, coverage form PI-ULT-128, Section IV. (Additional Coverages) subsection H the Members' claims were not part of, nor were they limited by the BPP coverage limit, but rather was "additional coverage".

116.    After Philadelphia and Riesbeck subsequently acknowledged in July 2018 that there was separate coverage for the Members claims, and that the Members claims were not subject of the BPP limit, they "created" another manner by which to avoid liability.

117.    On July 11, 2018, Philadelphia and Riesbeck demanded that, as a condition of payment of the Members' claims, the Members must first execute affidavits stating that they had no other insurance coverage.

118.    Philadelphia and Riesbeck were attempting to shield Philadelphia from responsibility for the claims by requiring that the Members execute an affidavit saying they had no insurance or in the alternative file claims with their own homeowners' policies.

119.    By their request that the Members file affidavits saying that they had no coverage for their losses, Philadelphia and Riesbeck were attempting to reduce Philadelphia's liability under the policy and further delay payment of claim amounts that they knew were justly due and payable, while at the same time undermining PLGE's relationship with its Members.

120.    PLGE told Philadelphia on or about July 16, 2018 that the Members would not be asked to execute any affidavits.

121.    Finally, in September 2018, almost six months after receiving the timely submitted claims, Philadelphia sent checks made payable to PLGE Members for the value of their losses, and in the same amount of the claims as first submitted in April 2018.

122.    Philadelphia paid the Members only after PLGE refused Philadelphia's demands that the Members first process claims through their individual homeowners' policies or submit a sworn affidavit that stated that they had no insurance.

123.    The delays in acknowledging the validity of the claim and remitting payment to the Members is further evidence of Philadelphia's bad faith and breach of its contractual obligations to PLGE.

124.    PLGE was harmed by the delays in paying Members' property claims.

***Philadelphia's Delay in Paying the Business Personal Property Claim***

125.    On May 23, 2018, PLGE submitted the detail claim for "Business Personal Property" coverage under PI-ULT-007.

126.    Although the claim amount was approved in May 2018, and was for the full coverage limit of $127,109, payment was delayed until September 24, 2018.

127.    On or about September 24, 2018, PLGE received a check in the amount of $127,109 which is the same amount as approved by Riesbeck on March 31, 2018.

128.    Pursuant to the insurance contract terms, payment was due within 30 days of the date the claim submission, unless it was disputed.

129.    The claim amount was never disputed by Philadelphia.  Accordingly, there was no justification for the five-month delay in payment.

130.    Philadelphia delayed payment in its continued attempts to leverage a settlement of the claim on terms favorable to itself.

131.    As a result, PLGE has been harmed by the delays in paying BPP claims.

***Philadelphia's Delay in Paying only a portion of the Business Interruption Claim***

132.    PLGE provided information sufficient to support the Business Interruption Claim to Riesbeck on March 12, 2018.  The claim was for the coverage limit of $125,000.

133.    Philadelphia failed and refused to timely finalize the claim, and subsequently engaged a separate independent forensic firm to evaluate the Business Interruption Claim.  PLGE communicated with the new forensic firm and provided them the information requested, in late September and early October 2018.

134.    Payment for the claim under this coverage form was delayed until January 16, 2019, and then only in the amount of $100,000.

135.    Philadelphia disputes that there is additional coverage under Coverage Form PI-ULT-128, IV (Additional Coverages), Section F.2.d. (Business Income).

136.    Philadelphia's refusal to honor its obligations encompassed within Coverage Form PI-ULT-128 is further evidence of its bad faith in adjusting the claim.

137.    The delay in payment was and remains intentional and without excuse, in Philadelphia's continued and continuing attempts to leverage a settlement of the claims on terms favorable to Philadelphia and are further evidence of Philadelphia's bad faith.

138.    The delays in payment on the business interruption claim and refusal to timely acknowledge and honor the terms of the insurance contract related to the unpaid $25,000 Business Interruption Claim caused and continues to cause PLGE harm.

***Philadelphia's Delay in Paying the Commercial Inland Marine Claim for Listed Equipment***

139.    On May 29, 2018, PLGE submitted the detail for its claim in the amount of $46,130 for "Listed Equipment" that was lost in the fire and insured under policy coverage form PI-CIM-010.  On May 31, Riesbeck acknowledged receipt of the detail listing of equipment.

140.    Payment was due within 30 days by terms of the policy coverage form.

141.    Payment was delayed without reason until January 16, 2019, a delay of over 300 days from the date of the loss.

142.    The delay in payment was intentional and without justification as part of Philadelphia's continued attempts to leverage a settlement of the claims on terms favorable to Philadelphia and is further evidence of Philadelphia's bad faith.

143.    The delays in payment for Listed Equipment caused PLGE harm.

144.     In early 2019, PLGE increased the claim under this coverage form, to include an additional claim amount for property that was "purchased" within 30 days before the fire, as permitted by policy coverage form PI-CIM-010, Section A.4.a.

145.     The claim was for farm tables purchased and delivered in February 2018 and lost in the fire.  The purchase price was $3,750.

146.     Philadelphia has  "denied coverage" alleging that the property should have been included as "Business Personal Property", and therefore would be denied as exceeding the coverage limit.

147.     Pursuant to coverage form PI-ULTD-005, there is coverage up to $1,000,000 for Newly Acquired Property, for "Real and Personal" property.

148.     Philadelphia's denial of coverage is further evidence of Philadelphia's bad faith in adjusting timely filed claims, and evidence of its continued attempts to leverage a settlement of claims on terms favorable to Philadelphia.

***Philadelphia's Delay and Failure to Pay in Full on the Computer Coverage Claim***

149.     PLGE has on repeated occasions submitted a claim under the computer coverage form, PI-CIM-053.

150.     Riesbeck reviewed the Computer claim under PI-CIM-053 with PLGE in March 2018.  Based upon Riesbeck's review of the information provided, and discussions with Philadelphia, he reserved the full amount of the coverage at $95,000 as of March 31, 2018.

151.     The detail listing of the Computer claim reviewed with Riesbeck in March 2018, was filed with Philadelphia in mid-2018.  Philadelphia responded and rejected the claim, and required that additional information and documentation would be required in order for Philadelphia to process the claim.

152.    PLGE refiled the claim with additional information available to it on December 3, 2018.  The claim was for $148,540, subject to a coverage limit of $95,000.  Much of the information requested by Philadelphia is no longer available, having been burned in the fire, but information to support the claim was supplied as available.

153.    Philadelphia refused to honor the full claim amount, approving only $61,520 of the claim on January 6, 2020, and subject to a depreciation hold back of $21,532.

154.    Philadelphia refused coverage for the "smart TVs" ($9,000) and the computer-based golf simulator ($25,000), both of which items PLGE was previously  told would be covered under the computer coverage.  Further, because PLGE was unable to provide the Model number and age of the Avaya phone system, Philadelphia discounted the claim to an amount that Philadelphia determined, without providing any support for the discounted value assigned to the loss.

155.    Philadelphia finally remitted partial payment to PLGE in the amount of $39,988 on January 15, 2020, which amount is net of a "depreciation holdback" in the amount of 35% without any justification for the 35% holdback figure.  Philadelphia has agreed to release $21,532 (depreciation holdback) after PLGE provides documentation that the lost computer equipment has been replaced.

156.    The delay and failure to make even a partial payment on computer claims for two years from the date of loss, and even though originally approved for the full coverage limit by Riesbeck in 2018, has caused PLGE harm and is further evidence of Philadelphia's bad faith and attempts to leverage a settlement of the claims on terms favorable to Philadelphia.

***Philadelphia's Delay and Failure to Pay in Full on the Building Demolition Claim***

157.     Philadelphia authorized PLGE to contract with a demolition company for the sum of $90,000 with the promise that monies would be timely advanced to cover the contract deposit and payment in full as and when billed.

158.     The demolition contractor commenced with the demolition and removal of most of the burned structure, before receiving a deposit based upon Philadelphia's promise of timely payment.

159.     Philadelphia delayed payment for 30 days despite having promised payment as a condition of hiring the demo contractor.

160.     The demolition work performed was the necessary work required to clean the site and make it safe for the golf season which was just commencing in April 2018.

161.     There remains significant additional work to be done, which PLGE has not scheduled based upon Philadelphia's continued failures and refusals to timely honor its contractual payment obligations under the policy coverage forms and based upon the timing of the golf season, and the adverse impact on the golf course operations had the work been undertaken immediately in early 2018.

162.     PLGE submitted an estimate of the value of the remaining demolition and debris removal work to be done in its initial May 9, 2018 "Statement of Loss", which estimate remains reasonable.

163.     Philadelphia has recently alleged that it is not obligated to pay for such additional work since it was not completed within 180 days of the loss.

164.     Philadelphia was timely advised of the remaining work shortly after the date of the fire, and delays in completing the work are in large measure a result of Philadelphia's failure

and refusal to timely honor its payment obligations to PLGE, and should not be rewarded for its bad acts and actions in that regard.

165.    The delay and failure to timely remit payment for building demolition has caused PLGE harm and is further evidence of Philadelphia's bad faith.

***Philadelphia's Refusal to Pay for Personal Effects***

166.    PLGE timely submitted claims and included a detail listing of the "Personal Effects" lost in the fire, pursuant to coverage form PI-ULT-007.

167.    Philadelphia has denied coverage alleging that "personal effects" were in fact "Business Personal Property" and therefore subject to the BPP limitation which full coverage limit had been paid.

168.    There is no definition of "personal effects" in the policy.

169.    There is no mention in coverage forms PI-ULTD-005 and PI-ULT-007 that "personal effects" are in fact Business Personal Property ("BPP") or subject to a BPP limitation.

170.    Philadelphia's refusal to honor the terms of its coverage, and attempts to deny coverage for Personal Effects, is further evidence of Philadelphia's bad faith.

***Philadelphia's Refusal to Pay for Losses of Fine Arts***

171.    In March 2018, Riesbeck acknowledge to PLGE that there was coverage for "Fine Arts" in the amount of $25,000 under coverage forms PI-ULTD-005 and PI-ULT-007.

172.    On May 7, 2018, Riesbeck summarized Philadelphia's "Statement of Loss" and included "Fine Arts" coverage in the amount of $25,000.

173.    Riesbeck subsequently acknowledged to PLGE that the limit had been increased to $50,000 pursuant to the terms of coverage form PI-ULT-128.

174.     Riesbeck was told that the Fine Arts would include some paintings, and 8 antique handmade Tiffany style leaded glass lamps created by a local artisan.  The antique Tiffany style leaded glass lamps alone were valued well in excess of the $50,000 coverage limit.

175.     Philadelphia and Riesbeck thereafter on repeated occasions beginning in June 2018, told PLGE that it would not honor a claim for "Fine Arts" that were lost in the fire.

176.     By letter dated February 26, 2019, Philadelphia did finally acknowledge that coverage existed for Fine Arts, and that a claim for Fine Arts that were lost in the fire "was mentioned to your adjuster earlier in the claim process, but to date, we do not have any presentation from you of the listed items and values that you are claiming".

177.     Philadelphia knows that its representations in February 2019 are untrue.  Riesbeck had been provided documentation including detailed pictures of the Tiffany style leaded glass lamps in early 2018… and acknowledged that coverage did exist.  Thereafter, Riesbeck reported to PLGE that Philadelphia had denied Fine Arts coverage.

178.     Philadelphia has and continues to delay payment for the Fine Arts that were lost in the fire, in its continuing attempts to leverage a settlement of PLGE's claims on terms favorable to Philadelphia.  This is yet another example of Philadelphia's bad faith.

***Philadelphia's Refusal to Pay for Property of Others***

179.     PLGE timely submitted claims pursuant to coverage form PI-ULT-128, Section V. (Coverage Extensions), subsection G. (Property of Others) for "property of others" lost in the fire, including, but not limited to, artwork/paintings of an 84 year old woman, and artwork/wrought iron sculptures of a local disabled artist.

180.     Cote, as an agent for Philadelphia, and the agency that sold the policy to PLGE, has advised PLGE that coverage exists for the property of others lost in the fire.

181.    Philadelphia first advised PLGE on September 13, 2018 that it would not honor the timely filed claim for the "property of others", based upon Philadelphia's contention that coverage for this claim was subject to a limitation as "Business Personal Property" which limitation has been fully expended by Philadelphia.

182.    There is no mention in PI-ULTD-007 that coverage for personal property of others under PI-ULT-128, would be considered Business Personal Property, and subject to the BPP coverage limit.

183.    A reading of the policy coverage form PI-ULT-128, Section V. (Coverage Extensions), notes that "the following are added to or amend the PROPERTY COVERAGE FORM under section A. 5., of coverage form PI-ULT-007.  There was not coverage for "Property of Others" outlined/described in coverage form PI-ULT-007.  Accordingly, a claim for "Property of Others" could not have been encompassed within the BPP limits.

184.    A reading of subsection G. of coverage form PI-ULT-128, Section V., notes that "(Philadelphia) will pay for the loss or damage under this extension up to $3,000 per claimant, $10,000 per occurrence at each described premise."  There is no reference to any Business Personal Property coverage limit in this extended coverage.

185.    The position taken by Philadelphia was taken in bad faith to deny PLGE access to funds required to reimburse others for the value of their property destroyed in the fire.

186.    The rejection of the claim by Philadelphia was in bad faith, and was done to delay and/or avoid payment of the claim.

187.    PLGE has been harmed as a result of Philadelphia's refusal to timely honor its claim payment obligations under this coverage form.

## COUNT I
(Breach of Contract)

188.    Plaintiffs repeat, restate and incorporate by reference the allegations of the

foregoing paragraphs 1 through 187 of this First Amended Complaint as if fully incorporated in

this paragraph.

189.    Philadelphia has breached its contractual obligations to Plaintiffs.

190.    As a result of Philadelphia's breach of contract, Plaintiffs have been damaged.

## COUNT II
(State Law Unfair Claim Practices)

191.    Plaintiffs repeat, restate and incorporate by reference the allegations of the

foregoing paragraphs 1 through 190 of this First Amended Complaint as if fully incorporated in

this paragraph.

192.    The fire loss at issue took place in the State of Maine.  The properties at issue are

located in both the State of Main and the State of New Hampshire.  The insurance policies at

issue were purchased in the State of New Hampshire through a New Hampshire insurance

broker.  Meetings and communications at issue detailed int his First Amended Complaint took

place in both the State of Maine and the State of New Hampshire.

193.    Maine statute (24-A M.R.S.A. § 2436–A) and New Hampshire statute (NH ST §

417:4) prohibit unfair claim practices.

194.    Philadelphia committed unfair claim practices by: knowingly misrepresenting to

insureds relevant facts or policy provisions related to coverages at issue; failing to acknowledge

with reasonable promptness pertinent written communications with respect to claims arising

under its policies; failing to adopt and implement reasonable standards for the prompt

investigation and settlement of claims arising under its policies; failing to develop and maintain

documented claim files supporting decisions made regarding liability; refusing to pay claims

without conducting a reasonable investigation; and failing to affirm coverage or deny coverage, reserving any appropriate defenses, within a reasonable time after having completed its investigation related to a claim.

195.     As a result of Philadelphia's unfair claim practices, Plaintiffs have been damaged.

## COUNT III
### (State Law Unfair Claim Practices)

196.     Plaintiffs repeat, restate and incorporate by reference the allegations of the foregoing paragraphs 1 through 195 of this First Amended Complaint as if fully incorporated in this paragraph.

197.     Maine statute (5 M.R.S.A. § 205-A) and New Hampshire statute (NH ST § 358-A:2) prohibit unfair or deceptive acts or practices in the conduct of any trade or commerce.

198.     Philadelphia's actions constitute unfair or deceptive acts or practices in the conduct of trade or commerce that were designed to: delay the reconstruction of the Plaintiffs' properties; delay and ultimately deny Plaintiffs recovery under various coverage forms to which Plaintiffs are entitled; and leverage a settlement of Plaintiffs' claims on terms favorable to Philadelphia.

199.     As a result of Philadelphia's unfair trade practices, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs demand judgment be entered:

A.     Awarding damages to Plaintiffs, and against Philadelphia on Counts I, II, and III in an amount to be proved at trial;

B.     Awarding Plaintiffs multiple damages to the extent available;

C.     Awarding Plaintiffs cost of suit and reasonable attorneys' fees;

D.     Awarding Plaintiffs pre-judgment and post-judgment interest; and

E.     For such other and further relief as to the Court may deem proper.

**Plaintiffs Respectfully Demand a Trial by Jury of All Claims and Issues so Triable**

Respectfully Submitted,

PLAINTIFFS PROVINCE LAKE GOLF
ENTERPRISES, INC. and PLG HOLDING
LLC,

Dated March 15, 2020                 /s/Phillip Rakhunov_____
Phillip Rakhunov
Pollack Solomon Duffy LLP
101 Huntington Avenue, Suite 530
Boston, MA  02199
(617) 439-9800
prakhunov@psdfirm.com